FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 01, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF YAKIMA, a municipal corporation,<br><br>　　　Defendant. | No. 1:20-CV-03156-SAB<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff Confederated Tribes and Bands of the Yakama Nation's Motion for Summary Judgment on Liability (ECF No. 69), and Defendant City of Yakima's Motion for Summary Judgment (ECF No. 71). The motions were considered without oral argument. Plaintiff Confederated Tribes and Bands of the Yakama Nation (the "Yakama Nation") is represented by Anthony Aronica, David Askman, Michael Frandina, Thomas Zeilman, and Shona Voelckers. Defendant City of Yakima (the "City") is represented by Kurt Peterson, Spencer Gheen, and Aaron Gilligan.

Having reviewed the parties' briefing and pertinent caselaw, the Court finds that although the Yakama Nation's oversight activities constitute "removal" actions under the Comprehensive Environmental Response, Compensation, and Liability Act, disputes of material fact preclude a finding on whether the Yakama

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *1**

Nation's costs are compliant with the National Contingency Plan. Therefore, both motions for summary judgment are denied.

### Facts[1]

This case is about recovery of costs for oversight of environmental remediation at a former municipal landfill site in Yakima, Washington. In 1963, the City entered into a lease with Boise Cascade Corporation to operate a municipal solid waste landfill on land owned by Boise Cascade Corporation, which was at the time primarily used as a lumber mill. The City operated the landfill on this land, referred to herein as the Landfill Site, from 1963 to 1970.

The municipal landfill was unlined and covered twenty-eight acres directly adjacent to the Yakima River. There have been releases or threatened releases of hazardous substances at the Landfill Site to both soil and groundwater, including diesel range organics; heavy oils; vinyl chloride; n-nitrosodiphenylamine; 4,4'-DDT; 4,4'-DDD; endosulfan II; bis(2-ethylhexyl) phthalate; 3,3'-dichlorobenzidine; arsenic; iron; manganese; nitrate; PCB aroclors; sodium and methane gas; and potentially lead and chromium. The Landfill Site is estimated to be within 500 feet of the Yakima River, and groundwater flows from the Landfill Site toward the river.

On or about January 11, 1996, the City notified the Washington Department of Ecology ("Ecology") of the inadvertent discovery of hazardous contaminants during the construction of the I-82 highway Exit 33A offramp. That same year, the Landfill Site was designated as a cleanup site by Ecology. From 1997 to 2015, the City, in coordination with Ecology, conducted soil and groundwater investigations to identify releases or potential releases at and from the landfill site. In 2015,

---

[1] The following facts derive from the parties' respective statements of fact, submitted pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56(c)(1). *See* ECF Nos. 70, 71, 76, 78, 82, 84.

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *2**

Ecology approved the City's final addition to the Remedial Investigation Report and the City is set to undertake a Feasibility Study.

On March 30, 2017, the City was identified as a potentially liable person ("PLP") for releases of hazardous substance at the Landfill Site pursuant to the Washington Model Toxics Control Act ("MTCA"). The Yakama Nation began reviewing site documents in March 2017. Ecology issued a formal determination that the City is a PLP for the Landfill Site in a letter dated May 5, 2017. Pursuant to MTCA, Ecology executed Agreed Order number 15861 with the City on July 9, 2018 to conduct removal and/or remedial action for the hazardous releases at the Landfill Site.

The Yakama Nation is a federally recognized Indian tribe. The Landfill Site is the location of a historic Yakama village, located approximately two or three miles from the Yakama Nation reservation. As noted, the Landfill Site is adjacent to the Yakima River, which is a usual and accustomed fishing place of the Yakama Nation under Article III of the Treaty with the Yakamas of June 9, 1855. 12 Stat. 951. The riparian area is culturally significant to the Yakama Nation and serves as critical habitat for certain endangered species. The Yakama Nation became involved in the Landfill Site to assess actual or threatened releases to the Yakima River, or other impacts to its tribal interests, from hazardous substances at the Landfill Site.

At issue in this case is the Yakama Nation's purported response costs. The Yakama Nation has performed a review of analyses completed by the City and overseen by Ecology, but has not engaged in independent data collection. Its response costs include time for meetings, telephone calls, and electronic mail among representations of Ecology, the City, and the Yakama Nation's Fisheries Program, as well as written correspondence and comments by Fisheries staff to Ecology on the Agreed Order and Interim Action Plan. Since the Yakama Nation's involvement at the Landfill Site, two cultural resource surveys were conducted.

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** *3

On or about June 17, 2020, in order to construct new roads as part of a proposed "East-West Corridor" project, the City entered into a purchase and sale agreement for land located within the Landfill Site. The City currently owns in fee simple land located within the Landfill Site.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Where, as here, parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside*

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** *4

*Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Accordingly, it is the district court's duty to "review each cross-motion separately . . . and review the evidence submitted in support of each cross-motion." *Id.*

## Discussion

The parties have submitted cross-motions for summary judgment. The Yakama Nation moves for summary judgment on the City's liability for response costs it has incurred from March 2017 through September 30, 2021 ($133,671.70) and future costs. It asserts that the City is liable as an "owner" of the landfill "facility" to which there have been releases or threatened releases of hazardous substances, and therefore, it is a liable party under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 103 *et seq.* The Yakama Nation argues that its activities constitute "removal" actions because they were necessary to "monitor, assess and evaluate the conditions at the Site"; it also argues its response costs are sufficiently documented. ECF No. 69 at 15–16.

Conversely, the City moves the Court for summary judgment on all claims against it, arguing that the Yakama Nation cannot prove the essential elements of a CERCLA claim. Specifically, it claims the Yakama Nation's activities do not constitute "removal" actions under CERCLA. In any case, the City also contends that the Yakama Nation's costs are not recoverable because they do not comply with the National Contingency Plan; it argues the purported costs are "unsubstantiated, do not relate to the Landfill Site, and cannot be properly differentiated without guesswork." ECF No. 71 at 3.

To prevail in a private cost recovery action under CERCLA, a plaintiff must establish four elements: (1) the site on which the hazardous substances are contained is a "facility," 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, *id.* § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *5**

incur response costs for "removal" or "remediation" action that were "necessary" and "consistent with the national contingency plan," *id.* § 9607(a)(4)(A); and (4) the defendant is within one of four classes of persons subject liability, *id.* § 9607(a)(1)–(4); *see generally Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001) (quoting *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir.1990)).

The parties do not dispute that the Landfill Site is a "facility" to which a "release" or "threatened release" of a hazardous substance has occurred. They also do not dispute that the City is a liable party under the statute, as the City is a current owner of the Landfill Site. Rather, the parties' motions present two legal issues pertaining to the third element of a CERCLA claim: that is, whether the Yakama Nation has (1) incurred response costs for a "removal" or "remedial" action (2) that was "necessary" and "consistent with the national contingency plan." 42 U.S.C. §§ 9607(a)(4), (a)(4)(B).

   A. <u>Whether the Yakama Nation's activities constitute "removal" actions under CERCLA.</u>

The first issue is whether the Yakama Nation's monitoring and oversight activities constitute removal or remedial actions. The Yakama Nation argues only that its activities were "removal" actions, as defined by 42 U.S.C. § 9601(23). The parties agree that the Court may look to the record to determine whether the Yakama Nation's activities constitute "removal" actions; on this issue, the parties do not dispute the kinds of activities the Yakama Nation engaged in, and there is no dispute of material fact that would preclude summary judgment on the matter.

"Removal" means:

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *6**

> taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. . . .

*Id.* "Cleanup-adjacent activities face a low bar to satisfying these definitions of 'removal,'" as the statute "covers all activities 'as may be necessary' to advance certain threat assessment or abatement goals." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 579 (9th Cir. 2018) (citing *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1238 (9th Cir. 2005)). The Ninth Circuit in *Pakootas* reasoned that the permissive language of "as may be necessary" means "qualifying activities need not be performed with the *intent* of achieving the statutory goals; need not be absolutely *necessary* to achieve those goals; and need not *actually* achieve those goals." *Id.* (emphasis in original). Rather, if the activities "are not an unreasonable means" of furthering the cleanup or removal of hazardous substances, they fall within the definition of "removal." *Id.* (citing *Cellco P'ship v. FCC*, 357 F.3d 88, 91 (D.C. Cir. 2004)).

The removal activities set forth by the Yakama Nation primarily involve communicating with Ecology to provide technical review and input on the investigation of contamination and cleanup actions at the Site. The Yakama Nation did not conduct any independent investigation related to the release or threat of release of hazardous substances, such as the collection of sediment or water samples. Instead, the Yakama Nation's involvement is summarized as "review[ing] documentation and prepar[ing] comments from a cleanup perspective." ECF No. 76-2 at 5. Such comments consisted of inquiries to Ecology and the City regarding concerns with selected sampling and monitoring methods, and findings. *See, e.g.*, ECF No. 76-2, ECF No. 73-7. The issue thus becomes whether these actions were an unreasonable means of furthering the cleanup and removal of hazardous substances at the Site. *Pakootas*, 905 F.3d at 579.

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *7**

The Yakama Nation's monitoring and oversight activities constitute removal actions. Its collaborative oversight of remedial actions at the Landfill Site, such as reviewing and commenting on proposed actions, participating in a technical assistance group, evaluating study results, and engaging in discussions concerning the City's removal of contaminated sediment, are activities that "may be necessary taken in the event of the threat of release of hazardous substances into the environment" and "may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances" pursuant to CERCLA. 42 U.S.C. § 9601(23).

The Court need not determine whether the actions were "absolutely necessary" to achieve the statutory goals of CERCLA; rather, it need only decide whether these oversight activities were an "unreasonable means" of furthering the assessment and cleanup of hazardous substances. *Pakootas*, 905 F.3d at 579. The Court finds these activities were not unreasonable because they "advance[d] certain threat assessment and abatement goals" at the Landfill Site. *Id.* Therefore, the Yakama Nation's oversight activities fall under the statutory definition of "removal."

      B.  <u>Whether the Yakama Nation's response costs are consistent with the National Contingency Plan.</u>

The second issue is whether the Yakama Nation's response costs are consistent with the National Contingency Plan ("NCP"). The primary limitation on the Yakama Nation's ability to recover its response costs is the requirement that those actions not be inconsistent with the NCP. 42 U.S.C. § 9607(a)(4)(A). When an Indian tribe seeks recovery of its response costs, consistency with the NCP is presumed. *Washington State Dep't of Transp. v. Washington Nat. Gas Co., Pacificorp*, 59 F.3d 793, 799–800 (9th Cir. 1995). To rebut this presumption, the defendant must prove the response action was arbitrary and capricious. *See id.* at 802; 42 U.S.C. § 9613(j)(2). While the City asks that the Court use a less

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *8**

deferential standard of review "such as reasonableness review," it does not cite any case or statute supporting the availability of an alternative standard of review. ECF No. 71 at 11. As the Yakama Nation is an Indian tribe seeking response costs, the correct standard is whether the costs were arbitrary and capricious or otherwise unlawful. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 949 (9th Cir. 2002) (citing *Washington State Dep't of Transp.*, 59 F.3d at 799).

At this stage of the proceedings, summary judgment on cost consistency is precluded because the facts on record are disputed and, at best, inconclusive on material issues. Summary judgment is only appropriate where there is no dispute of genuine fact. Fed. R. Civ. P. 56(a). The parties disagree on whether there are one or two CERCLA facilities, which affects assessment of the Yakama Nation's cost reports; yet, there is insufficient factual development on that legal issue. Moreover, a significant portion of the Yakama Nation's cost documentation is redacted and prevents meaningful review on summary judgment. It is not possible for the Court to discern the relatedness, or the reasonableness, of the purported costs absent additional evidence.

To illustrate, the City contends that some of the Yakama Nation's claimed costs relate to a separate contaminated site, known as the Mill Site, or the East-West Corridor project. Whether some costs pertain to a separate CERCLA site, or the East-West Corridor project, is material to determining whether all or some of the Yakama Nation's costs for monitoring the Landfill Site are consistent with the NCP. Costs for an unrelated site to which the City does not share liability are not recoverable, and neither are costs related to the East-West Corridor project. The present record does not provide adequate factual briefing for the Court to determine whether the Mill Site is part of the same CERCLA "facility" as the Landfill Site, or whether the City may be a liable party for the Mill Site.

The City also argues that the Yakama Nation's legal billing record is inadequate, as most of the information is redacted. In support of its motion, the

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT *9**

Yakama Nation has provided a response cost documentation report for fiscal years 2018 to 2021. ECF Nos. 70-1, 70-3. The report includes personnel time sheets, travel advances, contractual invoices, and legal support services. The City points out a large portion of the legal support services invoices are completely redacted, totaling nearly $64,000 of billed hours. ECF No. 70-1 at 91–129. The Court agrees that the legal billing record is unhelpful as submitted—yet, it comprises a substantial portion of the Yakama Nation's costs.

The present record does not sufficiently account for legal costs expended at the Landfill Site, and it does not allow the Court to resolve necessary factual and legal issues. The Court cannot conclude that the Yakama Nation's costs are wholly inconsistent with the NCP, a finding requested by the City in its motion, but it also cannot conclude that the same costs are consistent because the record does not address all essential facts. For these reasons, neither party is entitled to judgment as a matter of law on the issue.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment on Liability (ECF No. 69) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 71) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 1st day of August 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** *10